PER CURIAM.

(No. 5125 )

LAURA A. HAYS, ADMINISTRATRIX of the ESTATE OF EARL PAUL HAYS, Deceased, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 7, 1973.*

APOIAN AND ROSS, Attorney for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

PERLIN, C.J.

Claimant seeks recovery of the sum of $25,000.00 plus costs for the death of decedent on November 11, 1961, in an automobile accident on Route 16 about one-fourth mile east of Hardin, Illinois. Decedent was killed as a result of colliding with a crane being used by respondent for road repairs.

Claimant charges that respondent was negligent in carrying out repairs on Route 16 in that it left a crane and erected barricades on a paved portion of Route 16; that it failed to erect adequate warning signs that the roadway was barricaded; that it failed to have sufficient lights on the warning signs; that it failed to place adequate lights and signs east of said barricades so as to warn approaching motorists of the detour, that it parked the crane on the travelled portion of the pavement; and that it failed to erect warning lights or signals on the crane so as to warn approaching motorists of its presence.

Three eyewitnesses testified in the proceeding: Gary Howland, the driver of an eastbound car, and his passengers, Lindell Brangenburg and Ervin Overjohn.

Howland testified that the accident occurred about 9:00 p.m. Howland was driving a truck eastbound on Route 16 when he came to a barricade and pulled off on the shoulder to go around it. He saw Mr. Hays' car coming from the opposite direction and saw a crane on the highway in the westbound lane. There was a one lane detour for both eastbound and westbound traffic. The Hays' car would have had to be in the same shoulder area in which

Howland's truck was traveling to avoid the highway barricades. The witness further testified that he noticed that some of the lights on the barricade had not been flashing properly before they were knocked down by decedent; that there did not appear to be any signs, and that the highway was covered with straw and was slippery at the point of the accident. The witness observed that the decedent's car was traveling at about 50 miles per hour, although it could have been five or ten miles per hour faster.

Howland's passengers corroborated the testimony of the driver. Overjohn did not believe the decedent was exceeding the speed limit, but stated the decedent evidently did not see the barricades in time to stop, although he noticed that the brakes of decedent's car were applied before the collision.

Lindell Brangenburg, the other passenger, testified that he did not notice any lights or signs on Route 16 on the west side of the barricade.

The sheriff of Greene County, Darrell McCollom, testified that he was called to the scene of the accident, but did not observe any signs along the way, although he traveled the same direction as decedent. He testified that he had observed that there was not sufficient lighting at the scene of the accident several nights before its occurrence, the only lighting being smudge pots. About one hour after the accident had occurred, the sheriff observed skid marks in a straight line about sixty or seventy feet in length at the scene.

The state trooper who investigated the accident testified that he saw signs warning of "road construction ahead" lit by pot flares; that he observed straw on the pavement just east of the crane and measured skid marks leading up to the rear of the crane which were 66 feet in length. He described a detour on the south side of the

pavement which was approximately 10 feet wide and not of sufficient width to allow two cars to pass safely. The crane was approximately 10 feet wide and was sitting on the two lane highway on the westbound or north side of the road.

Francis R. Halasey, respondent's resident engineer, testified that he investigated the scene of the accident two days after it occurred and the following signs had been erected for a westbound traveler: "Road Under Construction . . . Drive Carefully," which was approximately 1,250 feet from the barricade. The sign is 5 feet vertically and 7 feet 6 inches horizontally, with black letters on a white background; "Speed zone ahead . . . 40 m.p.h." about 2 feet by 3 feet; "Detour Ahead" which is 3 feet square, also with black letters on a white background; "Road Repairs Ahead," the same size as the detour sign with a red flag on it; "Barricade Ahead," also 3 feet square; "One Way Traffic" about 575 feet away from the one-way traffic; and an arrow pointing toward the detour road. The barricade horses were described as having a six foot by two foot rail on top, two legs on each end, a flashing amber light and a strip of amber paper made of reflectorized material. Halasey did not know whether on November 11, the smudge pots were operating, not having been there since the day before the accident. The crane had been left on the highway "because it was easier to see and for the rest of the work that was necessary to do the repair job." The crane weighed 10 to 15 tons, and there were no flares, reflector lights, or markings on the crane or on its frame.

Edgar Pethtel, who was Chief of Police at Hardin, Illinois, at the time of the accident, testified that he had passed the scene of the accident about an hour before it had happened and that the area was lit and had lights down the side of the road and underneath the barricade. He was the first law officer on the scene. Pethtel also testified that he

noticed the straw covering the pavement under the wheels of the Hays' automobile. There were flashing lights on the barricade and flare pots on the pavement around the edge of the machine.

Orval Knopp, the construction foreman of the project, testified that the barricades and lights met the specifications as to highway signs, and that there was no further use for the crane for any further work on the road. "The reason we had not moved the crane on this last night of work was that we were working on the ditches." There was no reason the crane could not have been moved off the highway, although, according to Mr. Knopp, it is customary practice to leave construction equipment within the barricaded area.

Before claimant may recover, it must be proved by a preponderance of evidence (1) that respondent was negligent; (2) that such negligence was the cause of the accident in question; and (3) that decedent was in the exercise of due care for his own safety and therefore, free from contributory negligence.

The respondent argues that where there is a preponderance of evidence showing the presence of illuminated warning signs to indicate a hazardous road condition, the driver in failing to observe them was contributorily, negligent and the respondent is therefore absolved from liability. (*Bodie* vs. *State*, 21 C.C.R. 386, 389; *Gray* vs. *State*, 21 C.C.R. 521; *Terracino* vs. *State*, 21 C.C.R. 177, 182; *Knoll* vs. *State*, 24 C.C.R. 287.)

Although there was some testimony that the area was not well lit, the respondent established by a preponderance of evidence that a driver travelling in the same direction as decedent should have seen all or some of the seven signs lit by pot flares and placed to warn motorists of the hazard. There were also barricade horses with reflectorized

material running across the top.

Despite the warnings, there was no evidence that decedent heeded them or slowed down before he came upon the crane.

Accordingly, claimant has failed to prove freedom from contributory negligence and the claim must be denied.